May it please the court. My name is Abby Formella and I'm a certified law student and with Lauren Ellis I represent petitioners Deisy Ordonez-Godoy and her son Caleb. I'll be presenting the opening argument and my colleague Lauren will be presenting the rebuttal which I'd like to reserve three minutes for. This court should reverse the agency because of two fundamental errors agency committed. First the IJ misapplied the law in her analysis about the objective reasonableness of Deisy's political opinion and petitioners membership in the Velazquez family because the IJ did not apply this circuit's precedent establishing asylum where a petitioner is a politically active member of a large politically active family many of whom have already been persecuted for their political beliefs. Second the IJ misapplied the law in her analysis about the past persecution that petitioners suffered because the IJ required physical harm and did not find that the threats to petitioners were legally sufficient. Turning to the first point the IJ misapplied the law in her analysis about the well-founded fear of future persecution. Deisy is a member of the Velazquez family because she is perceived as such. She and Gerson have been a couple for 14 years and have two children together. She is the mother of two blood relatives of the Velazquez family and she lived in Amanda Velazquez her mother-in-law's home for four years while she was in Honduras. At 242 in the record the Secretary of the Libre Party indicates that he views her as a member of the Velazquez family and Daisy indicates in her asylum application that she is treated by society as a member. Counsel isn't that belied by some by by other testimony in the record that suggests that that people that came to persecute the family recognized that she was that she was that she was not a blood relative and that she was from a different family and knew who her father was and said that's fine and left her alone? Well this this particular incident shouldn't be the measuring point for the harm that has occurred or hasn't occurred to Daisy or to petitioners generally because the political activity of petitioners family significantly increased after this event. So the eyes of the persecutors would be more on petitioner petitioners after this initial encounter because Carlos. So what so what persecution did she suffer? Well after this particular incident four members four members of her family were killed. What what what did she suffer? Well she was threatened individually on three separate occasions. She at first at 412 in the record it indicates that after Gerson saved Adrian they called the family and said that they said that quote when they least suspected it they would kill him and the rest of his family. Second at 546 in the record Yesenia Barona a close relative of the leader of the Figueroa said that Daisy particularly and the family family generally were quote on the list to be killed by the Figueroas. And then the third time she was threatened was at 27 in the record in the Amanda Velazquez letter where where she Amanda Velazquez says that the Figueroas would quote murder my entire family if I do not give up my campaign. And then the the violence that her family has suffered it has been recognized as part of the persecution. Just for clarity are you arguing she suffered previous persecution and therefore there's an assumption that she'll be persecuted or you're just saying she generally she has a expectation of prosecution in the future? Both that she has. What's the judge Biby's question and then is mine. With respect to the first where's the person the person is there persecution just because you've been threatened with persecution? Well with. I thought the whole idea was you you think there's persecution in the future because you've been persecuted in the past. Well this court's precedent in Mashiri indicates that four particular things will lead to a finding of past persecution. Threats to family, harm to family, economic harm, and psychological harm. Okay. Here Daisy has suffered all of those. There's been harm to her family as four of her members, four of the members of her family have been killed, five have faced attempted, five different family members have faced attempted assassinations, and then five have been forced to flee, and then there's been threats to the family generally as previously discussed. They also face economic harm as a result of the Figueroas persecution. Juan and Gerson, Daisy's father-in-law and husband, said that they were forced to stay inside and And then Daisy testified that she faced psychological harm as a result of the Figueroas persecution, that she had nightmares, and that she feared for her and Caleb's lives. So Daisy's facts meet the four components in the Mashiri test, granting her a claim of past persecution. The Figueroas, there's evidence that the Figueroas also imputed the same Velasquez family political opinion to Daisy. For one thing, the IJ provided no reasoned legal analysis about Daisy's political opinion, and even if we were to assume she did, she didn't apply the correct legal standard. In Ramirez-Rivas, this court found an imputed political opinion where the petitioner was a member of a politically active family, where the persecutors had previously imputed a political opinion to a similarly situated family member, and where the petitioner had engaged in highly visible political activity. Here, the IJ found sufficient facts to meet the legal requirements of Ramirez-Rivas. At 188 in the record, Daisy indicates that she was heavily involved in Carlos's mayoral campaign, that she invited people to and attended campaign meetings and rallies, that she cooked food for these events, and that she generally helped where she could. And at 173 in the record, she indicates that these are the same activities that Edith Velasquez, her aunt, was killed for. So if the Figueroas imputed a political opinion to Edith, then they must have also done the same to Daisy. It is hard to keep all the different family members straight, but so the aunt who you mentioned was killed, she was not a political candidate herself, but rather just a helper on one of the campaigns? That's correct, along with Alexi, Edith's brother and Carlos's brother. They led the campaign? They were just, they were in the same position that Daisy is in, that they were just supporters of Carlos's mayoral campaign and and helped where they could, that they did the same activities that Daisy participated in. Yeah, the IJ finds that her mother-in-law and father-in-law and other relatives have not had any problems, even though they remain. Well, this is directly refuted, I'm glad to bring that up, because this is directly refuted by the Amanda Velasquez letter at pages 26 and 27 of the record. It indicates that Amanda and Juan are still heavily involved in Honduran politics, that in fact, Amanda is running for the exact same position that so many of the Velasquez family members were killed for. Now, the BIA found that this letter was merely cumulative, but this was both incorrect, because the standard for a well-founded fear of future persecution is whether all of the evidence viewed cumulatively tends toward a finding of future persecution. How are they being persecuted? In the letter, it indicates that the Figueroas have been calling Amanda and threatening that if she doesn't end her mayoral campaign, that they're gonna kill her and the rest of their family, that she knows that she's at risk of death as a result of her information that the BIA did not look at, because it was presented after the IJ had... Did you move to remand? Yes, there was a motion to remand, but the BIA failed to consider it, because it said that it was merely cumulative. That's the Amanda Velasquez letter that we were just talking about. And I want to be cognizant of the rebuttal time, so if there are no further questions. Thank you. May it please the Court. Petitioner, I can only presume, has abandoned her arguments that she preserved her challenges to the denial of protection of the Convention against Torture, as we explained in our brief. The issue was not exhausted, it was not part of the pro bono affirmance, and there I assume that's been dealt with. With respect to the asylum and withholding claim, Petitioner is essentially attempting to retry her case here in the Court of Appeals. This standard review does not require this Court to determine that the Board's decision was, in fact, correct. It only requires that the Court determine that the decision was reasonable, and I would submit that there's substantial evidence supporting the Board's denial of asylum and withholding of removal. Here, as this Court indicated, Petitioner here was never physically harmed. And I'll restate the precedent holding that this Court's precedent, not always, but generally, requires some instance of physical harm to support a finding of past persecution. And even assuming that these threats were, indeed, persecution. They seem quite credible, don't they? They may be credible, but, and I will submit, and I agree that there's no adverse credibility finding here. That being said... No, no, I mean the threats from the Figueroas. They seem quite capable of carrying out death threats, right? They do, they do. That being said, Petitioner here lived in the same house. The Figueroa family knew where she was. They did not carry out the threats against her, even though they were certainly capable of doing so. I believe the only... You don't think there's even a 10% chance that if she were to return and become involved again in political matters, that she would be a target of these threats? I would say, based on the Board's ruling, that there's, indeed, a less than 10% chance here. Because, importantly, the Board ruled that the threats were made as a result of Petitioner's husband. Petitioner says in her reply brief that all of her family members were politically active, but her husband was not. She testified, I believe that's on page 190 of the record, her husband was not politically active, not involved in politics, and... But other members of his family, quite a few other members of his family were. Other members of his family certainly were, but because Gerson, there's ample evidence, Gerson's the husband, and so, like, that husband, but there's ample evidence that the Figueria family was angry, had a dispute with Gerson, because she intervened in some... She saved his friend, Adrian. Apparently, Adrian and the Figueria family had a long, ongoing... It was McCoy's type of thing. And there's... The Board determined that so long... If the threats, the persecution, even though there's a family relationship, it actually is based on a personal dispute rather than a recognized protected ground, then there is no nexus. So Petitioner says we rely on decisions from other circuits for the proposition that personal animus cannot be... Even if the family is involved, it does not constitute a nexus. What is Gerson's current status in the United States? My understanding is he was granted administrative closure. And what does that mean? That means that at current, the Attorney General will let him remain. And he's kind of... My understanding is he's kind of in legal limbo. He does not have legal permanent status, but the Attorney General is not looking to actively deport him as well. So why is... What is the policy of the United States with respect to breaking up a family, then, when they've allowed one member of the family to remain? Well, the policy of the United States... Every case is different. So just because someone obtains asylum, affirmative relief, or administrative closure, does not automatically mean that a relative can... It's not just a relative. It's a wife. Okay, the wife. Sure, wife. Yes, sure. There could be some hardships resulting, but the policy of the United States is just because one spouse... And she can't apply for any kind of spousal visa based on her husband, because all her husband has is administrative closure as opposed to asylum. I do not know the answer to that question. I do not know the answer to that question. Do you know why the government is so interested in removing her but not her husband? Well, she's a priority. She's a priority. Yeah, why? That's what I'm asking. Why is she a priority? The previous administration adopted a policy that priorities would be aliens who either had criminal convictions or aliens who were caught relatively shortly after crossing the border, and that was Petitioner's case here. My understanding of the record, she and her son tried to cross over the border. They were caught almost immediately, within a day or two, by Border Patrol officials, and under the previous administration, that was considered a priority case for removal. What is this new evidence that the board declined to look at? The new evidence was a letter from Petitioner's Amanda. Amanda, who is the aunt, is Kirsten's aunt-in-law. Apparently, Amanda decided to run for mayor, and she claims she and her husband, who is serving as the campaign manager. I thought it was her mother-in-law. Mother-in-law? That's what I thought. Amanda's the mother. I'm sorry. I'm sorry. Again, it's hard to do this. There's a lot of family members. The mother-in-law, yes. So that was the new evidence. The board determined it was cumulative and declined to accept it. The most powerful part of that letter, it seems to me, is that there is an explicit threat that the mother-in-law communicates, that the Figueroa said, we will kill your entire family if you continue with your political activities. And you're not disputing that the petitioner here is, in fact, a member of that family, right? Other people have experienced threats as outlined in Petitioner's briefs. But that information was not taken into account by the BIA or the IJ, is that correct? It was not part of the IJ's decision, that's for sure. I'm sorry? It was not part of the IJ's decision. And then there was a motion to remand or there was not a motion to remand? There was a motion to remand, yes. And the BIA declined and thus presumably didn't take that into account. I'm just trying to get the record straight in my mind. Is that accurate? If I recall the board's decision, they determined the letter was cumulative. It was more of the same evidence. And even if they accepted it, she would have the same problems with Nexus because the death threat she received. You say that or the agency says that? I mean, even if accepted. Even if accepted. Are you saying even if accepted or the agency said even if accepted? The agency said it was cumulative. I'm interpreting. Said it was what? Cumulative. Cumulative. The agency said the letter was cumulative, more of the same. I see. Okay. Again, two of the same Nexus problems. We understand there's political threats. Is that true that it's cumulative? I believe so. I believe so, yes. The letter also said that the election was going to be in November 2017. So presumably that's happened. We have not had a motion to reopen saying that the mother-in-law was harmed. So if you were to remand, order the board to accept this letter and the mother-in-law is still unharmed, then we'll just be back here arguing the same Nexus issues as well. You think we need some more murders before the threat is credible? I don't understand. You think that we need some more people to get murdered by the Figaro's before we'll be able to conclude that the threats are credible? One more time. I apologize, Your Honor. Well, there have been a lot of people murdered, right, at the hands of the Figaro's because of their political activities. I would submit that if the immigration judge had granted her a signed application, that might have been reasonable. But the immigration judge determined that, like, the reason she was being threatened was because of this personal dispute. That just seems wrong because most of the people who were murdered had nothing to do with this personal dispute that her husband had. It had to do with their very overt political activities. That's true, but the threats against her, the threats against her, she was on this death list. I mean, she said her husband was as well. Her husband was not politically active. We do know the Figaro's were after the husband because of this personal dispute with Adrian. If you look on page 411 to 413, there's a letter from Adrian. It was written in February 2014. Adrian makes very clear that the Figaro's are after Gerson and other family members because of this personal dispute. No, no, that's what I'm saying. There are plenty of other family members, put aside the husband, who were targeted precisely because. Yeah, but Kishner here is not being targeted. There's no evidence that the Figaro's have imputed a political opinion to her other than the fact she happens to be related to these people. Right, no, no, that's what I agree. But why isn't that enough that she's, in terms of like a particular social group analysis, that's the family, that family is identifiable. Yeah, and the immigration judge assumes she's part of the family. As an aside, the attorney general does not agree with that. So if you were going to remand, please make clear that. Why is she not a member of the family? Because Honduras does not recognize Camelot marriage. So she was unmarried cohabitants. Okay, but let's just talk about the well-founded fear of future persecution. She's certainly a member now. Yeah, so here, I understand the agency assumed part of the family, so I'm bound by that. But if the court were to address that issue, please make clear that we're just assuming for the sake of argument and not a direct finding. It would become finding precedent because the attorney general would not agree with that. Maybe the attorney general is wrong on that point. I don't see just because you disagree with it doesn't mean we have to accept that in our decision. I don't understand why you're giving us a command. All right, okay. It's a request. So, I mean, I agree the court can. I'm hopeful it chooses to. But, I mean, I would think that if the immigration judge had- Are you trying to preserve now the question of whether it's a social group, recognizable social group? Absolutely, family per se, yes. Whether, like, she was part of the family, the agency assumed that. But if the immigration judge granted relief, I'm reasonably confident DHS would appeal that. Now she's a part of the family. Now she's a part of the family, no. What's unclear is whether or not she can, like, contribute to everything that's happened post hoc, so retroactively. We have a doctrine of imputed political opinion. I don't know why we couldn't have a doctrine of imputed family relationship. I mean, that is, it may be that the vigoroas recognize common law marriage in ways that the attorney general doesn't. Well, my understanding is Honduras does not. So, I mean, it could be that the family- Well, it may not be a legal status in Honduras. Yes, but families, as far as we're concerned, is still, I mean, related by blood, marriage, or adoption. Was she married at the time of the IJ decision? I believe so. I believe so, yes. Well, the IJ is making a decision as to whether, if she went back now, she would be persecuted, right? At the time the threats came in, at the time all the threats were happening, she was not married. So she was an- They sent a child, yes. They may have considered her part of the family, but- Counsel, I want to take you back to the question of Gershon's status in the United States. In light of his status, temporary and undefined as it may be, is there any reason to think that mediation would help the parties in this case? We would refer you to mediation first. I can certainly check with, inquire with the Department of Homeland Security. It would be their call rather than the Department of Justice. But if you would like me to do so and report back- It just strikes me as a very, very odd situation that we would allow the husband to remain in the United States, albeit in some kind of legal limbo, and then ship his wife and kids back to Honduras. It strikes me as a very, very strange situation. Okay. If you would check on that and get back to- It strikes me that way, too. I'm sorry, what? It strikes me that way, too. Of course. I appreciate it. I will indeed inquire with the Department of Homeland Security, and I will report back to the court as soon as I have an answer whether they are interested in mediation. And so, might there be any other questions? I don't think so. All right. Okay. Thank you. Thank you. Good morning, Your Honors. My name is Lauren Ellis, certified law student. I just have a few points on rebuttal. First, in regards to physical harm. Second, in regards to personal vendetta. And lastly, in regards to Gerson's political activity. First, the government said that there is no physical harm. However, this court does not require physical harm for either finding of past persecution or future persecution, as established in Mashiri and under Ramirez-Rivas. Second, the government contends that the violence is a result of a personal vendetta. However, this court's precedent also does not require that- does not distinguish between where the violence began. Whether the violence began as a result of a personal vendetta is not relevant. What is critical is whether the subsequent persecution is on account of protected ground. Here, the persecution is on account of the Velasquez family membership and the imputed political opinion. Just help me with the imputed political opinion for your client. I know she was active in that one campaign. But it seems like the vast majority of the evidence relates more just to her membership in the family, right? And I take it those are two separate grounds that your client's pursuing. Well, the political involvement is so intertwined with family. This is exactly similar to the case in Ramirez-Rivas, where she is politically active. She is a member of a large politically active family. She also is included on this death list, which suggests that she was- this imputed political opinion was imputed to her. Are there people who have been physically persecuted in the family who were not politically active? Yes, Your Honor. Edith Velasquez, which is Petitioner's aunt, she engaged in the same political activities as Petitioner, but her partner was also murdered. And there is no evidence in the record suggesting that that partner was involved in any way in the campaign. Oh, the partner was not involved. Exactly. Counsel, is there any evidence in the record that the police have been consulted about any of this? No, Your Honor, but these are-the Figueros are the incumbent national party's hitmen. These are government actors. They act on behalf of the national party and suppress political- But the national party is the government? Yes, Your Honor. Both nationally and within the community of Petitioner's community. But we don't have any evidence of police involvement. We don't know whether the police would acquiesce in any of this, whether the police were afraid to arrest the Figueros. No, Your Honor. Any report of anything reported to the police? That's not in the record, Your Honor. So the answer is there's no evidence that anything has ever been reported to the police. It's not clear that we really have acquiescence by the government on this. I understand that there's a political aspect to this. Daisy credibly testified that the police are working also with the Figueros. You can assume that the police would not be able to protect. I see that I'm out of time. If this Court has no further questions. Thank you. We want to recognize the contributions of the University of California Irvine Law School. Thank you very much for a job well done. Thank all counsel for the argument. The case is submitted.
judges: Rogers, Bybee, Watford